# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

FILED

AUG 18 2017

MARY C. LOEWENGUTH, CLERK

BERNADETTE DENGLER

        Plaintiff,

v.

THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 118
and PAUL HOGLE,

        Defendants.

**17 CV 6582 W**

Case No:     __-CV-____

**VERIFIED COMPLAINT**
**PLAINTIFF DEMANDS**
**TRIAL BY JURY**

The Plaintiff, BERNADETTE DENGLER, by her attorney, Steven A. Lucia,

complaining of the defendants, THE INTERNATIONAL BROTHERHOOD OF

TEAMSTERS, LOCAL 118 and PAUL HOGLE, alleges as and for her Verified

Complaint:

## JURISDICTIONAL ALLEGATIONS

1.    At all times hereinafter mentioned, the Plaintiff, Bernadette Dengler, was

a resident of Rochester, in the County of Monroe, State of New York.

2.    At all times hereinafter mentioned, defendant, the International

Brotherhood of Teamsters, Local 118 (the "Union"), was a corporation duly organized

and existing under the laws of the State of New York.

3.    At all times hereinafter mentioned, defendant Union was a corporation

duly organized and existing under the laws of another state, but was authorized to

transact business in the State of New York.

4.      At all times hereinafter mentioned, defendant Union was an unincorporated association conducting business in the County of Monroe in the State of New York.

5.      At all times hereinafter relevant, the defendant Union was actually doing business in the State of New York, and maintained its principal office at 130 Metro Park, Rochester, NY.

6.      At all times hereinafter relevant, the defendant Paul Hogle resided at Rochester, New York and was a business agent for defendant Union and was Plaintiff's union representative.

7.      From April 17, 2010 to March 8, 2016, Plaintiff was employed by Wegmans Food Markets, Inc. ("Wegmans") in its General Merchandise Distribution Center and was terminated by Wegmans in March of 2016 in retaliation for her having reported instances of sexual harassment by her co-employees.

8.      Plaintiff requested that defendant Union file a grievance for her with Wegmans for what she believed was wrongful retaliatory termination as the result of her having reported instances of sexual harassment in her workplace.

9.      Defendant Hogle was Plaintiff's representative at the Union and advised Plaintiff the defendant Union would grieve her termination from Wegmans.

10.      To the contrary, however, defendant Union did not grieve Plaintiff's termination and as further detailed below, Hogle commenced his own campaign of sexually harassing behavior against the Plaintiff.

11.      Heretofore, the Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") under Charge Number 525-2017-

00053 in which she alleged she had been sexually harassed by defendant Hogle,

discriminated against and given disparate treatment by defendant Union because of her

gender.

12.     On or about May 23, 2017, the EEOC sent the Plaintiff a Determination

and a separate "Dismissal And Notice of Rights" indicating that the EEOC was closing

its file and advising Plaintiff she had the right to pursue matter in Federal District Court."

(A copy of said Determination and "Right to Sue" notice is attached hereto as Exhibit A).

13.     All agency proceedings have now been concluded.

14.     Jurisdiction over this action is conferred on the Court by the provisions of

28 U.S.C. 1331, inasmuch as this action alleges sexual harassment and gender

discrimination, retaliation and disparate treatment discrimination, and arises under the

laws of the United States, particularly Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. 2000 [e] et seq.

15.     The defendant Paul Hogle is sued herein as an aider and abettor under

Title VII and Executive Law Section 296, in that he aided, abetted, incited, compelled

and coerced all of the acts complained of, and directly participated in all of the conduct

giving rise to this action, and is thereby personally liable for discriminatory and

retaliatory behavior.

MATERIAL FACTS APPLICABLE TO ALL CAUSES OF ACTION

16.     At all times hereinafter mentioned, the Plaintiff was a female, and a

member of the class of persons protected against gender discrimination under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000 (e) et seq., and Section 296 of

the Executive Law.

17.     During the time of her employment with Wegmans, Plaintiff was a member of the Union.

18.     After her termination, Plaintiff believed the Union was going to file a grievance with Wegmans regarding the facts leading to her termination and the underlying sexual harassment to which she was subjected.

19.     Indeed, Plaintiff advised the Union and its representatives that she had been subject to workplace harassment during her employment with Wegmans.

20.     After her termination, defendant Hogle was assigned as Plaintiff's union representative.   He had a fiduciary responsibility to assist Plaintiff with her grievance. Hogle assured Plaintiff that he would do everything he could to get Plaintiff's job back, grieve her claim against Wegmans or find Plaintiff a new job.

21.     Despite his assurances that he would assist Plaintiff, in March and April of 2016, defendant Hogle began his own campaign of sexually harassing behavior towards Plaintiff.

22.     Defendant Hogle began communicating with Plaintiff via text messages about her employment situation, a circumstance she found odd in the first instance.

23.     At his request, Plaintiff would also meet with defendant Hogle, usually at Wegmans on Calkins Road in Henrietta, NY, to ostensibly discuss her employment situation and Hogle's efforts in that regard.

24.     Although she always maintained a professional demeanor and tone in their meetings and in Plaintiff's responses to defendant Hogle's messages, Hogle immediately began turning the subject of the communications and their meetings towards Plaintiff's physical appearance, how she felt about Hogle and whether she found him attractive.

25.     Plaintiff was horrified when it quickly became evident that Hogle had no interest in fulfilling his fiduciary obligations as Plaintiff's union representative but rather he was more interested in pursuing Plaintiff for his own prurient interests.

26.     Indeed, defendant Hogle repeatedly told Plaintiff that she was attractive, she had a beautiful smile, that she could be a model and that she did not look a day over forty.

27.     These statements made me Plaintiff extremely uncomfortable and all the while she attempted to keep the communications centered on her employment situation and her potential grievance with Wegmans.

28.     Plaintiff called another Union representative to report Hogle's activities but no one from the Union would take her calls.

29.     Plaintiff also went in person to the Union's offices to complain about Hogle but was told to leave the premises.

30.     Plaintiff had no interest in Hogle and she ignored his advances towards her. Plaintiff is a very shy individual and she felt she did not have any recourse other than to put up with Hogle since he was supposedly helping Plaintiff to get her job back or assist her with new employment.

31.     In one very disturbing string of text messages, Hogle repeatedly asked Plaintiff to send him a picture of herself via text. He had previously asked Plaintiff in person to do the same.

32.     At one point, Hogle then told Plaintiff he was going to send a picture of himself to her. True to his word, defendant Hogle texted Plaintiff a picture of his male anatomy.

33.    Plaintiff ceased communicating with defendant Hogle after he sent the lewd photo of himself.  The next day, however, defendant Hogle asked Plaintiff to meet him at Wegmans on Calkins Road in Henrietta.

34.    At that time, defendant Hogle attempted to hug Plaintiff much to her dismay.  Plaintiff had no further contact with Hogle after that incident.

35.    Plaintiff only went to meet Hogle after he sent the photograph to her because she was scared and confused.

36.    Plaintiff was the sole means of financial support for her husband who had been seriously ill for the last several years with a heart condition and who subsequently passed away.

37.    Plaintiff could not afford to lose her job with Wegmans and the benefits it afforded.

38.    Plaintiff believed in good faith that Hogle would assist her with her employment situation and would grieve her termination from Wegmans.

39.    Instead, however, defendant Hogle was more interested in pursuing Plaintiff for his own sexual interests.

40.    Plaintiff subsequently learned the Union did nothing to investigate or grieve her claim against Wegmans.

41.    In fact, during a meeting in April 2016 attended by Plaintiff's attorney, defendant Hogle, Local 118 Union President, Paul Markwitz, and the Union's attorney, Mr. Markwitz stated that the Union had not finished investigating Plaintiff's claim and the circumstances surrounding her termination from Wegmans.

42.     Plaintiff learned that Mr. Markwitz stated that he would direct his attorney to review Plaintiff's file, possibly interview Plaintiff and report back to Plaintiff and her attorney with the results of that investigation and a decision on whether to grieve her claim against Wegmans.

43.     Neither Plaintiff nor her attorney were ever contacted by the Union or its attorney with the results of the Union's purported "investigation."

44.     It was not until November 2016 that Plaintiff learned the Union never grieved her claim against Wegmans nor even had the intention to do so.

45.     Plaintiff was subjected to discriminated by the Union because of its own discriminatory conduct in failing to fulfill its duty of fair representation to her.

46.     The Union acted arbitrarily, discriminatorily and in bad faith against the Plaintiff.

47.     Since the foregoing events occurred, Plaintiff learned that she was not the first woman that has complained about Hogle's sexual harassment towards female members of the Union.

48.     Further, Plaintiff also learned that other Union officials have engaged in a pattern of similar behavior.

49.     The Union was long aware of and condoned sexually harassing conduct by its male agents and officials against its female members.

50.     Despite his egregious sexually harassing behavior, Hogle maintained his position with the Union.

51.     It also bears noting that Plaintiff filed a criminal complaint against defendant Hogle for his actions.

52.    Defendant Hogle was charged with harassment as a result.

53.    In addition to the foregoing, Plaintiff was subjected to disparate treatment.

54.    Similarly situated male members of the Union were not subject to sexually harassing behavior in connection with the Union's prosecution, failure or alleged failure, to prosecute employment grievances.

55.    Clearly Plaintiff was discriminated against based on her gender when she was subjected to Hogle's sexual harassment and the Union's breach of its duty to fairly represent the Plaintiff and to properly grieve her claim.

56.    As a result of the foregoing, the Plaintiff has been damaged and has sustained and continues to suffer loss of income, compensation, fringe benefits and expected raises, physical and emotional injuries, distress, anxiety, frustration, embarrassment and pain and suffering and damage to her reputation.

FIRST CAUSE OF ACTION FOR SEXUAL HARASSMENT UNDER TITLE VII

57.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 56 hereof as if fully set forth herein.

58.    The Plaintiff was the subject of severe, continuous and pervasive sexual harassment perpetrated by her union representative, defendant Hogle, which was humiliating to the Plaintiff.

59.    The aforesaid acts of sexual harassment affected the terms, conditions and privileges of the Plaintiff's membership in the Union and led the Union to breach its duty to grieve Plaintiff's claim against Wegmans.

60.    The defendant Union knew of Hogle's sexual harassment of the Plaintiff and failed to take any remedial or corrective action.

61.    Defendant Hogle sexually harassed the Plaintiff while in the course and scope of his employment with the Union, and his respective actions were at all times within the scope of his authority as the Union's employee.

62.    Hogle's position as the Plaintiff's superior aided his sexual harassment of the Plaintiff, because Plaintiff was afraid of alienating Hogle and did not want to lose her ability to find another job.

63.    The defendant Union is vicariously liable for Hogle's sexual harassment of the Plaintiff under the principles of Respondeat Superior, because Hogle, the perpetrator of the sexual harassment, was the Plaintiff's superior, and his sexual harassment of the Plaintiff took place openly.

64.    As a result of the foregoing, the defendant Union is liable for the sexual harassment perpetrated by Hogle on the Plaintiff, in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000 (e) et seq.

65.    Further, the Union failed in its duty of fair representation to the Plaintiff when it did nothing to grieve her complaint about her termination from Wegmans and failed to keep Plaintiff or her attorney apprised of any such grievance despite repeated requests.

66.    The Union's failure to grieve Plaintiff's termination from Wegman's was motivated by the fact that Plaintiff was a female.

67.    The Union's conduct in that regard was arbitrary, discriminatory and in bad faith and was a breach of its duty to fairly represent the Plaintiff.

## SECOND CAUSE OF ACTION FOR SEXUAL HARASSMENT DUE TO
## THE UNION'S FAILURE TO EXERCISE REASONABLE CARE UNDER TITLE VII

68.     Plaintiff repeats, reiterates and realleges each of the allegations set forth in paragraphs 1 through 67 hereof as though fully set forth herein.

69.     Plaintiff was subjected to continuous and pervasive sexual harassment, motivated by her sex, which negatively altered the conditions of her membership with the Union.

70.     Upon information and belief, the Union, did not adopt any policy concerning the prevention, correction and reporting of sexual harassment at any time prior to or during the Plaintiff's membership in the Union.

71.     The Union failed to exercise reasonable care to prevent or correct the sexual harassment Hogle directed at the Plaintiff.

72.     The Union's failure to grieve Plaintiff's termination from Wegman's was motivated by the fact that Plaintiff was a female.

73.     The Union's conduct in that regard was arbitrary, discriminatory and in bad faith and was a breach of its duty to fairly represent the Plaintiff.

74.     As a direct and proximate result of the defendants' unlawful conduct, the Plaintiff suffered, and will continue to suffer loss of income, monetary damages, emotional distress, physical injuries, pain and suffering, humiliation, embarrassment and damage to her reputation.

75.     The Defendant Union is therefore liable to the Plaintiff for the sexual harassment of the Plaintiff by its employees, which discriminated against the plaintiff because of her gender, in violation of the provisions of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. (e) et seq. and which resulted in the Union's failure to

fulfill its duty to fairly represent the Plaintiff.

THIRD CAUSE OF ACTION FOR SEXUAL
HARASSMENT UNDER EXECUTIVE LAW SECTION 296

76.     Plaintiff repeats, reiterates and realleges each of the allegations set forth in

paragraphs 1 through 75 hereof as though fully set forth herein.

77.     The Plaintiff is female and a member of a protected class as defined by

Section 291 of the New York Executive Law.

78.     The defendants subjected the Plaintiff to offensive and humiliating acts of

sexual harassment as aforementioned, which was motivated in part by Plaintiff's gender,

constituted an unlawful employment practice in violation of the provisions of Section 296

of the New York Executive Law.

79.     The Union's failure to grieve Plaintiff's termination from Wegman's was

motivated by the fact that Plaintiff was a female.

80.     The Union's conduct in that regard was arbitrary, discriminatory and in

bad faith and was a breach of its duty to fairly represent the Plaintiff.

FOURTH CAUSE OF ACTION FOR RETALIATION

81.     Plaintiff repeats, reiterates and realleges each of the allegations set forth in

paragraphs 1 through 80 hereof as though fully set forth herein.

82.     The Union breached its duty to fairly represent Plaintiff after she refused

and rejected Hogle's advances and harassing conduct and after the Union learned that

Plaintiff intended to file a claim for sexual harassment.

83.     The Plaintiff's rejection of the harassment to which she was subjected, and

her intent to file a harassment were protected activities, under the First Amendment to the

US Constitution, and under Title VII of the Civil Rights Act of 1964 and Section 296 (6) of the Executive Law.

84.     The Union's motivation for breaching its duty to fairly represent the Plaintiff was based in part upon its knowledge the Plaintiff was planning to file a complaint depicting the Union and Hogle's sexual harassment and hostile behavior, and the Union's failure to grieve Plaintiff's complaint against Wegmans was therefore retaliatory in nature, in violation of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000 (e) and Section 296 (1) (e) of the Executive Law.

### FIFTH CAUSE OF ACTION FOR
### EXTREME AND OUTRAGEOUS CONDUCT

85.     Plaintiff repeats, reiterates and realleges each of the allegations set forth in paragraphs 1 through 84 hereof as though fully set forth herein.

86.     Defendants' actions complained of herein constitute extreme and outrageous conduct directed at the Plaintiff undertaken with the intent to cause Plaintiff to suffer severe emotional distress or otherwise undertaken in reckless disregard of the substantial probability that such extreme and outrageous conduct would cause Plaintiff to suffer severe emotional distress.

87.     As a direct and proximate result of Defendants' extreme and outrageous conduct complained of herein, Plaintiff has suffered extreme emotional distress.

88.     As a result of Defendants' sexual harassment, discrimination and retaliatory conduct against Plaintiff, Plaintiff has been damaged and is entitled to compensatory and punitive damages and attorney fees and costs.

## JURY DEMAND

89.    Plaintiff demands a trial by jury as to all issues that may be subject to a jury verdict.

## INJURY AND DAMAGES

90.    As a result of the acts and conduct complained of herein, the Plaintiff has suffered and will continue to suffer the loss of a career and loss of a salary, health insurance, costs, medical bills for herself and bonuses, benefits and other compensation which employment entails, out of pocket medical expenses, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life and other non-pecuniary injuries.

WHEREFORE, the Plaintiff Bernadette Dengler demands judgment against the Defendants, International Brotherhood of Teamsters Local 118 and/or PAUL HOGLE, individually, as follows:

On the First Cause of Action in the amount of Five Hundred Thousand Dollars ($500,000.00).

On the Second Cause of Action in the amount of Five Hundred Thousand Dollars ($500,000.00).

On the Third Cause of Action in the amount of Five Hundred Thousand Dollars ($500,000.00).

On the Fourth Cause of Action in the amount of Five Hundred Thousand Dollars ($500,000.00).

On the Fifth Cause of Action in the amount of Five Hundred Thousand Dollars ($500,000.00) together with:

(i)     An award of compensatory damages for mental, emotional and physical

injuries, distress, pain and suffering and damage to reputation.

(ii)    An award or exemplary or punitive damages for the intentional violation

of Plaintiff's rights;

(iii)   An award of the Plaintiff's reasonable attorney fees and litigation

expenses incurred in the prosecution of this action, pursuant to 42 USC 1988;

(iv)    Together with interest thereon, and the costs and disbursements of this

action.

Yours, etc.,

LAW OFFICE OF STEVEN A. LUCIA

August 16, 2017

_____
STEVEN A. LUCIA (SL-0459)
Attorney for Plaintiff
16 West Main Street
Rochester, New York 14614
585-270-5420

VERIFICATION

BERNADETTE DENGLER, being duly sworn, deposes and says:

I am the Plaintiff in the within action.  I have read the foregoing

Complaint and know the contents thereof; the same is true to my own knowledge, except

as to the matters therein stated to be alleged on information and belief, and as to those I

believe it to be true.

_____
BERNADETTE DENGLER

Sworn to before me this
___ day of August, 2017

_____
Notary Public

**STEVEN A. LUCIA**
Notary Public, State of New York
Qualified in Monroe County
REG. NO. 02LU6321855
Commission Expires 03/23/2019